**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | |
|---|---|
| DUNCAN MOORE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Case No.: 4:09-CV-273-RH/WCS |
| vs. ) | |
| ) | |
| TALLAHASSEE MEMORIAL HEALTHCARE, ) | |
| INC., a Florida non-profit corporation, ) | |
| ) | |
|     Defendant. | |
| _____/ | |

### ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant, Tallahassee Memorial HealthCare, Inc. ("TMH"), by and through undersigned counsel, submits its Answer and Affirmative Defenses to the Complaint, and its Counterclaim, as follows:

### ANSWER

1.    Admitted for jurisdictional purposes only and otherwise denied.

2.    Admitted for jurisdictional purposes only and otherwise denied.

3.    Denied that Plaintiff served as President and Chief Executive Officer ("CEO") of TMH from January 29, 1988 until June 23, 2003.  Without knowledge sufficient to admit or deny the allegations contained in the second sentence of paragraph 3, therefore, denied.

4.    The first sentence is admitted.  The second sentence is admitted for jurisdictional purposes only and otherwise denied.

5.    Admitted for purposes of venue only and otherwise denied.

6.    Admitted.

7.      Admitted that at some time around October of 1998, TMH and Moore agreed to amend the 1988 Employment Agreement.  Denied that the document attached to the Complaint as Exhibit "B" is a true and complete copy of the 1998 Employment Agreement.

8.      Admitted that the 1998 Employment Agreement, among other things, provided for retirement benefits for Moore, and that paragraph 8 of the Complaint accurately quotes a portion of the language thereof.  Denied that the quoted language provides a complete description of the retirement benefits provided by the 1998 Employment Agreement or agreed upon by TMH and Moore or that it is legally valid.

9.      Admitted that said attachment is a portion of a TMH Board of Directors resolution, but denied that the attachment to the Complaint is a complete document.

10.     Admitted that Moore and TMH executed a document dated October 22, 2000, a copy of which is attached to the Complaint as Exhibit "C" ("2000 Employment Agreement"), but denied that Exhibit "C" represents the complete agreement between Moore and TMH or that it is legally valid.  Admitted that the language regarding Moore's retirement benefits in the 2000 Employment Agreement was changed from the language in the 1998 Employment Agreement.  The remainder of the allegations contained in paragraph 10 are denied.

11.     Admitted that the 2000 Employment Agreement describes a portion of an "employee pension benefit plan," as that term is defined at 29 U.S.C. § 1002 (2)(A), established and maintained by TMH, and that TMH acted as the Plan Administrator for any plan that is found to exist.  Denied that the 2000 Employment Agreement is a complete or accurate description of that "employee pension benefit plan."

12.     Admitted that the 2000 Employment Agreement contained provisions entitling Moore to certain retirement benefits and severance payments if he resigned for good reason or was

terminated without cause prior to the expiration of his employment term.  Denied that the 2000 Employment Agreement reflected the actual and complete agreement between the parties or that it is legally valid.  Further denied that subparagraphs 12(a) and (b) of the Complaint accurately reflect the substance of the 2000 Employment Agreement.  The remainder of the allegations contained in paragraph 12 are also denied.

13.     Admitted that the 2000 Employment Agreement contains a provision entitled "Base Compensation" and that paragraph 13 of the Complaint accurately quotes the language thereof. The remainder of the allegations are denied.

14.     Admitted that the parties executed an agreement entitled "Agreement Regarding Early Retirement and Termination of Employment" ("Retirement Agreement") which is attached to the Complaint as Exhibit "D."  The remainder of the allegations are denied.

15.     Admitted that paragraph 15 of the Complaint accurately quotes language from the Retirement Agreement.  With regard to the specific language, the document speaks for itself.

16.     Admitted that paragraph 16 of the Complaint accurately quotes language from the Retirement Agreement.  With regard to the specific language, the document speaks for itself.

17.     Admitted that Moore retired effective June 23, 2003, and that Moore became entitled to certain retirement benefits and severance payments at that time.  The remainder of the allegations contained in paragraph 17 are denied.

18.     Admitted that immediately following Moore's retirement, TMH began making bi-weekly payments to Moore.  The remainder of the allegations contained in paragraph 18 are denied.

19.     Admitted that, subsequent to Moore's retirement, TMH reduced the initial payments to Moore.  Admitted that TMH announced this change by letter to Moore dated May 10, 2004, and

that a copy (without its attachments) is attached to the Complaint as Exhibit "E."  The remainder of the allegations contained in paragraph 19 are denied.

20.    Denied that TMH created the plan reflected in the document attached to the Complaint as Exhibit "F" on or about April 21, 2004.  Admitted that the document attached to the Complaint as Exhibit "F" sets forth the plan of TMH which was created in 1998.

21.    Admitted that the document attached to the Complaint as Exhibit "F" ("2004 SERP") defines Moore's retirement benefits, and that TMH reduced payments to Moore in May of 2004 (as reflected in the letter attached to the Complaint as Exhibit "G").  The remainder of the allegations contained in paragraph 21 are denied.

22.    Admitted that, on or about November 10, 2005, Moore made a claim on TMH for retirement benefits under the 2000 Employment Agreement, and said claim is attached to the Complaint as Exhibit "H."  Denied that Exhibit "H" includes any claim for severance benefits under the Retirement Agreement.  The remainder of the allegations contained in paragraph 22 are denied.

23.    Admitted that by letter dated May 21, 2006, TMH conveyed to Moore its decision concerning Moore's claim for benefits and that said letter of decision is attached to the Complaint as Exhibit "I."  The remainder of the allegations contained in paragraph 23 are denied.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Without knowledge sufficient to admit or deny, therefore, denied.

## COUNT I

28.    The Defendant's responses in  paragraphs 1 through 27 above are incorporated herein.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied that Moore has fulfilled the condition precedent of exhaustion of administrative remedies with regard to any claims for severance payments.  The remainder of the allegations in paragraph 33 are admitted with regard to any claim for retirement benefits.

34.     All allegations contained in Plaintiffs' Complaint that are neither admitted nor denied herein are hereby denied.

## DEFENSES

### FIRST DEFENSE
### (No Violation of Law)

The Defendant's actions in determining the benefits payable to Plaintiff were in all respects proper and consistent with applicable law and regulation.

### SECOND DEFENSE
### (Reasonable Interpretation)

Defendant's determination of benefits payable to Plaintiff was a proper and reasonable interpretation and application of the Supplemental Employee Retirement Plan ("SERP"), and was not arbitrary and capricious.

### THIRD DEFENSE
### (Breach of Fiduciary Duty)

If at the time Moore entered into the 1998 Employment Agreement, the 2000 Employment Agreement and the Retirement Agreement, he understood the language regarding ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" to have the meaning he now

claims, Moore, as President and CEO of TMH, breached his fiduciary duty to TMH when he entered into those agreements and said agreements are therefore invalid.

FOURTH DEFENSE

(Fraudulent Inducement)

Moore fraudulently induced TMH to enter into the 1998 Employment Agreement.  Such fraudulent inducement renders that agreement or portion thereof, and the 2000 Employment Agreement as modified by the Retirement Agreement, which were based on the 1998 Employment Agreement, subject to reformation by this court.  Moore, as the President and CEO of TMH, drafted the 1998 Employment Agreement and represented to members of the Board of Directors ("Board") that the language regarding ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" served two purposes.  In a letter dated September 24, 1998, he stated that the contract would reflect "the recent retirement plan expansion awarded by the Compensation Committee" and that such a change was "made necessary by the fact that in reporting the compensation of me . . . as required by the Internal Revenue Service my compensation is allocated among three different TMH corporations and is reported in component parts."  If the language regarding ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" is found to include benefits that the appropriate members of the Board had not discussed or approved, including post-retirement benefits, or does not include an offset, Moore's representations as to the basis and the reasons for the new definition of "compensation" were false and he either knew they were misrepresentations, or should have known they were misrepresentations.  Moore, as the President and CEO of TMH, intended to induce members of the Board to accept his representations regarding the new language and such representations were false.  The members of the Board justifiably accepted and relied on Moore's status as a fiduciary of TMH and on Moore's representations that the language he drafted accurately reflected the plan that it had approved.  The members of the Board did not intend to

materially modify the retirement benefits approved in 1998 when the 2000 Employment Agreement and the Retirement Agreement were executed, and therefore the pertinent language in those agreements is also based on Moore's fraudulent inducement. If the language regarding ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" is found to have the meaning propounded by Moore, then TMH suffers damages by having to pay him additional benefits and such agreements should be reformed.

## FIFTH DEFENSE
### (Fraudulent or Negligent Omissions of Contract Language)

If the language regarding ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" is found to have the meaning that Moore now claims, Moore either fraudulently or negligently failed to inform the Board of Directors of TMH of the financial impact of the 1998 Employment Agreement. Moore, as the President and CEO of TMH, had a duty to disclose the meaning of that Agreement, to ensure that the Agreement accurately stated what the Compensation Committee had authorized, and to ensure that any contract into which he entered with TMH was fair and in the best interest of the corporation. Such omissions render that agreement, and subsequent agreements based on the same omissions, subject to reformation by this court.

## SIXTH DEFENSE
### (Fraudulent or Negligent Omission of Financial Information)

If "Base Compensation" is found to have the definition that he now claims, Moore either negligently or fraudulently omitted to inform the Board of Directors of TMH of the financial impact of the 2000 Employment Agreement and Retirement Agreement. Moore, as the President and CEO of TMH, had a duty to disclose the full financial impact of his retirement benefit, to ensure that the Agreement accurately stated  what the Compensation Committee had authorized, and to ensure that any contract into which he entered with TMH was fair and in the best interest of the corporation.

TMH had a relationship with Moore based on trust and confidence.  Moore did not accurately or fully inform the Board members of the changes between the 1998 Employment Agreement and the 2000 Employment Agreement, and in particular of the impact of the removal of the reference to the Compensation Committee minutes and attachments.  Unless at the time of contracting Moore was also mistaken as to the financial consequences of the changes he made, then he knew or should have known what the Board understood those consequences to be, and under his duty of disclosure, he should have informed TMH's directors of the changes he was making.  Such omissions render the agreements subject to reformation by this court.

SEVENTH DEFENSE
(Mutual Mistake)

Mutual mistakes regarding the meaning of the language ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms" in the 1998 Employment Agreement and the definitions of "Base Compensation" and "Benefits" in the 2000 Employment Agreement require that the 1998 Employment Agreement and 2000 Employment Agreement, as modified by the Retirement Agreement, be reformed to express the agreement between Moore and TMH.

EIGHTH DEFENSE
(Unilateral Mistake)

TMH made unilateral mistakes in the 1998 Employment Agreement regarding the meaning of the language ". . . the total salary and benefits submitted . . . on the required IRS 990 Forms," and regarding the definition of "Base Compensation" in the 2000 Employment Agreement, as modified by the Retirement Agreement.  The meaning of those terms, and the financial consequences thereof, were basic assumptions on which the 1998 Employment Agreement and the 2000 Employment Agreement and Retirement Agreement were entered into and the effects of the mistakes are such that enforcement of the contract would be unconscionable, or Moore, as President and CEO of TMH, had reason to know of the mistake or his fault caused the mistake.  TMH is entitled to

8

rescind the 1998 Employment Agreement, and the 2000 Employment Agreement and the Retirement Agreement, or such parts of those agreements as were affected by the mistakes.

## NINTH DEFENSE
### (Failure to State a Cause of Action)

The Complaint fails to state a cause of action against TMH upon which relief can be granted, because Plaintiff failed to attach a complete copy of one of the operative agreements, the 1998 Employment Agreement.

## TENTH DEFENSE
### (Equitable Defenses)

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, ratification, laches, and/or estoppel.

## ELEVENTH DEFENSE
### (Exhaustion of Remedies)

Plaintiff failed to exhaust his administrative remedies with regard to any claims he may be asserting, and failed to adequately participate and/or cooperate in the administrative process which was required under ERISA to determine the benefits to which Moore is entitled.

## TWELFTH DEFENSE
### (Payment)

TMH asserts the defense of payment and is entitled to an offset against any additional or back retirement benefits that may be found to be due Moore, because it paid Moore an excess amount of retirement and severance benefits between June of 2003 and June of 2006.

## THIRTEENTH DEFENSE
### (Failure to Mitigate)

Plaintiff failed to mitigate his damages, if any.

FOURTEENTH DEFENSE

(Statute of Limitations)

Plaintiff's claim is barred in whole or in part by the applicable statute of limitations.

FIFTEENTH DEFENSE

(Fraud or Illegality)

Plaintiff's claim is barred in whole or in part by the doctrine of *Unclean Hands*, because Plaintiff engaged in fraud or illegality in the negotiation of any retirement benefits set forth in the 1998 Employment Agreement, the 2000 Employment Agreement, and the Retirement Agreement.

SIXTEENTH DEFENSE

(Other Defenses)

TMH reserves the right to amend its answer to assert additional defenses that may become available or appear during the proceedings in this case, and also reserves the right to assert other and related defenses as may become available.

## COUNTERCLAIM

Pursuant to Rule 13(a), Fed. R. Civ. P., defendant/counter-plaintiff Tallahassee Memorial HealthCare, Inc. ("TMH") asserts the following counterclaims against plaintiff/counter-defendant Duncan Moore ("Moore").

### Allegations Applicable to All Counts

1. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. sec. 1367(a).

2. Moore held the positions of President and Chief Executive Officer ("CEO") of TMH from July 1, 1988 until June 23, 2003.

3. Moore and TMH entered into an employment agreement effective January 29, 1988, a copy of which is attached hereto as Exhibit "1" ("1988 Employment Agreement").

4.      At all times relevant to this action, Moore, as President and CEO, was a fiduciary of TMH and owed TMH the duties of, *inter alia*, full disclosure and fair dealing with regard to the contracts he entered into with TMH.

5.      At all times relevant to this action, all the members of TMH's Board of Directors served on a volunteer basis and did not receive any salary for such service.

6.      At all times relevant to this action, the members of TMH's Board of Directors were entitled to rely on the completeness and accuracy of the information provided by Moore, especially when he was entering into contracts with TMH.

7.      At some time in or around early 1998, Moore requested that TMH institute a supplemental executive retirement plan for himself and several other senior executives.  To that end, he put members of TMH's Board of Directors ("Board") in contact with a compensation consultant named Paul Flood ("Flood").

8.      Flood met with members of the Board on multiple occasions and presented them with suggested options for such a plan, and potential financial consequences of those options. On September 9, 1998, the Board approved the creation of a "Supplemental Executive Retirement Plan" ("SERP").

9.      On or about October 22, 1998, TMH and Moore executed another employment agreement, a copy of which is attached hereto as Exhibit "2" ("1998 Employment Agreement"). The minutes from the September 9, 1998 meeting approving the creation of a SERP are attached to and incorporated by reference into the 1998 Employment Agreement.  Points and explanations that Flood had presented to members of the Board are attached to and incorporated by reference into said minutes.

10.     When TMH and Moore executed the 1998 Employment Agreement, members of the Board had considered and authorized a SERP that would give Moore a SERP "target" of 65 percent of salary at 15 years of employment.

11.     At the time Moore executed the 1998 Employment Agreement, he was aware of what information members of the Board had reviewed and what SERP benefits they had authorized. He was also aware of what amounts were being reported to the IRS on TMH's Form 990.

12.     The 1998 Employment Agreement was drafted by Moore or with language provided by him and under his direction and supervision.

13.     If the language regarding ". . .the total salary and benefits submitted . . . on the required IRS 990 Forms" is found to have the meaning that Moore now claims, Moore either fraudulently or negligently failed to inform the Board of Directors of TMH of the financial impact of the 1998 Employment Agreement.  Moore, as the President and CEO of TMH, had a duty to disclose the meaning and financial impact of that Agreement, to ensure that the Agreement accurately stated what the Compensation Committee had authorized, and to ensure that any contract into which he entered with TMH was fair and in the best interest of the corporation.

14.     Moore, as the President and CEO of TMH, drafted the 1998 Employment Agreement and represented to members of the Board of Directors ("Board") that the language regarding ". . .the total salary and benefits submitted . . . on the required IRS 990 Forms" served two purposes.  In a letter dated September 24, 1998, which letter accompanied a draft of the 1998 Employment Agreement that was created at the direction of Moore, Moore stated that the change would link the contract to "the recent retirement plan expansion awarded by the Compensation Committee" and that such a change was "made necessary by the fact that in reporting the

compensation of me…as required by the Internal Revenue Service my compensation is allocated among three different TMH corporations and is reported in component parts."  A true and correct copy of said letter and draft are attached hereto as Exhibit "3."

15.     If the language regarding ". . .the total salary and benefits submitted . . . on the required IRS 990 Forms" is found to include benefits that the appropriate members of the Board had not discussed or approved, including post-retirement benefits, or does not include the offset required to meet the benefit target of 65 percent of salary, Moore's representations as to the basis and the reasons for the new definition of "compensation" were false and he either knew they were misrepresentations, or should have known they were misrepresentations.  Moore, as the President and CEO of TMH, intended to induce members of the Board to accept his representations regarding the new language and such representations were false.

16.     The members of the Board justifiably accepted and relied on Moore's status as a fiduciary of TMH and on Moore's representations that the language he drafted accurately reflected the plan that it had approved.

17.     On or about October 22, 2000, TMH and Moore executed yet another employment agreement, a copy of which is attached hereto as Exhibit "4" ("2000 Employment Agreement").

18.     The members of the Board did not intend to materially modify the retirement benefits approved in 1998 when the 2000 Employment Agreement was executed.

19.     When TMH and Moore executed the 2000 Employment Agreement, TMH's Board had not authorized any change in the calculation of Moore's SERP benefits, and Moore provided Board members with reasons for the change in relevant language from the 1998

Employment Agreement that hid that he was expanding or attempting to expand his future SERP benefits.

20.     The 2000 Employment Agreement was drafted with language provided by Moore and at his direction.

21.     Moore did not discuss with the Board or any of its members the financial impact of removing the September 1998 minutes, and the attachments thereto, as part of his Employment Agreement.

22.     If "Base Compensation" is found to have the definition that he now claims, Moore either negligently or fraudulently omitted to inform the Board of Directors of TMH of the financial impact of the 2000 Employment Agreement.  Moore, as the President and CEO of TMH, had a duty to disclose the full financial impact of his retirement benefit, to ensure that the Agreement accurately stated what the Compensation Committee had authorized, and to ensure that any contract into which he entered with TMH was fair and in the best interest of the corporation.  TMH had a relationship with Moore based on trust and confidence.  Moore did not accurately or fully inform the Board members of any changes in his retirement benefits from the 1998 Employment Agreement to the 2000 Employment Agreement, and in particular of the impact of the removal of the reference to the Compensation Committee minutes and attachments.

23.     Prior to his termination, Moore did not apprise the Board's members of or discuss with them the financial implications of his interpretation of his SERP benefits, even though he knew what financial projections Flood had provided to the Board in 1998 and knew that those were the only relevant financial projections with which the Board had been provided.

24.     Moore executed audit letters every year that he was President and CEO of TMH indicating, *inter alia*, that he had made available to the auditors all financial records and related

data; that there were no material agreement that had not been properly recorded in the accounting records; and that all liabilities of TMH of which he was aware were included in the consolidated financial statements.

25.     Despite his execution of the aforementioned audit letters, Moore did not make copies of the 1998 Employment Agreement, the 2000 Agreement, or the Retirement Agreement available to TMH's auditors, even though by the time those agreements were executed, any SERP benefits to which he is entitled were vested.

26.     Moore and TMH agreed that Moore would retire effective June 23, 2003. Pursuant to that agreement, on or about January 29, 2003, Moore and TMH executed an "Agreement Regarding Early Retirement and Termination of Employment" ("Retirement Agreement"), a copy of which is attached hereto as Exhibit "5."

27.     The members of the Board did not intend to materially modify the retirement benefits approved in 1998 when the Retirement Agreement was executed, and TMH's Board did not authorize any change in the calculation of Moore's annual SERP benefits.

28.     Moore did retire from TMH effective June 23, 2003.  Beginning July 3, 2003, TMH began making bi-weekly retirement and severance payments to Moore.  Initially, TMH made such bi-weekly payments in the amount of $23,936.04.

29.     Effective beginning with the payment made May 21, 2004, and as explained in a letter to Moore dated May 10, 2004, a copy of which is attached hereto as Exhibit "6," TMH reduced that amount to $21,653.85, minus $912.88 that it claims it was owed for overpayments made from June 23, 2003 until said date.

30.     On or about April 21, 2004, TMH re-codified the "Tallahassee Memorial HealthCare, Inc. Supplemental Executive Retirement Plan" ("Restated SERP") that it had adopted in September of 1998, a copy of which is attached hereto as Exhibit "7."

31.     Effective June 23, 2006, when the three-year severance period contemplated by the 2003 Retirement Agreement ended, TMH began paying Moore $219,400.00 per year in SERP benefits, at the rate of $18,283.30 monthly.

32.     By letter dated November 10, 2005, Moore claimed additional retirement benefits under the 2000 Employment Agreement, a copy of which letter is attached as Exhibit "8" ("Claim Letter").  Although TMH invited Moore to attend hearings on his claim and to submit evidence, Moore neither submitted evidence that would support his interpretation, beyond copies of the 2000 Employment Agreement and the Retirement Agreement, nor did he appear in person or even submit an affidavit.

33.     By letter dated May 21, 2006, TMH informed Moore of its decision regarding his Claim Letter.  A copy of that May 21, 2006 letter ("Claim Decision") is attached hereto as Exhibit "9."

34.     By letter dated August 7, 2006, a copy of which is attached hereto as Exhibit "10" ("Appeal Letter"), Moore appealed TMH's decision as set forth in the Claim Decision.  Although TMH invited Moore to attend hearings on his appeal and to submit any evidence that was not already in the administrative record, Moore neither submitted evidence that would support his interpretation, beyond copies of the employment agreements and the Retirement Agreement, nor did he appear in person or even submit an affidavit.

35.     By letter dated May 15, 2007, a copy of which is attached hereto as Exhibit "11" ("Appeal Decision"), TMH informed Moore of its decision regarding his Appeal Letter.  As set

forth in the Appeal Decision, TMH concluded that Moore is entitled to $227,596.84 per year in retirement benefits under the SERP.

36.     Upon issuance of the Appeal Decision, TMH began paying Moore at the new rate of $227,596.84 per year, or $18,966.40 monthly, and also paid Moore the difference between that amount and the $219,400.00 per year it had been paying him since June 23, 2006 through the date of the Appeal Decision.

37.     Moore has claimed SERP benefits from TMH that exceed, by hundreds of thousands of dollars per year, any financial projections that were ever presented to TMH's Board as representing the financial implications of said benefits.

### COUNT I
#### (Declaratory Relief)

38.     Defendant/counter-plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 37 of the counterclaim.

39.     There exists a genuine, bona fide dispute between TMH and Moore over the amount of retirement benefits to which Moore is entitled, and the amount in dispute exceeds $75,000.00.  Declaratory relief is therefore proper pursuant to 28 U.S.C. sec. 2201.

40.     TMH asserts that Moore's interpretation of the language regarding his retirement benefits in the 1998 Employment Agreement and the 2000 Employment Agreement, as modified by the Retirement Agreement, is incorrect and unreasonable.  TMH respectfully submits that this Court may and should interpret said language to give effect to the reasonable intent and expectations of the parties.

41.     TMH seeks a declaration from this Court that its interpretation of Moore's employment agreements is correct, and that Moore is only entitled to $227,596.84 per year in SERP retirement benefits.

WHEREFORE, defendant/counter-plaintiff, TMH, requests that the Court enter a declaratory judgment in TMH's favor, declaring that it has correctly determined the amount and basis of Moore's SERP retirement benefits in its Appeal Decision, and awarding TMH its costs and attorneys' fees incurred as a result of Moore's claim and this action, pursuant to the 1998 Employment Agreement and the 2000 Employment Agreement as modified by the Retirement Agreement, and also pursuant to 29 U.S.C. sec. 1132(g)(1).

## COUNT II

### (Rescission)

42.     Defendant/counter-plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 38 of the counterclaim.

43.     This is a claim against Moore for rescission of the 2000 Employment Agreement as modified by the Retirement Agreement, and of the 1998 Employment Agreement, or at least the portions thereof that affect Moore's retirement benefits.

44.     The rescission requested is appropriate based on the existence of fraud in the inducement of the relevant agreements, mutual or unilateral mistake as to the scope and financial consequences of Moore's retirement benefits set forth therein, and Moore's intentional or negligent omission of material information when obtaining the Board's agreement to the language he requested.

45.     It would be inequitable for Moore to receive the retirement benefits he now claims, for all the reasons set forth herein.

46.     TMH would not be unjustly enriched if this Court grants the requested relief, as this Court can reform the operative agreements to comport with the actual and informed agreement of the parties, or can enforce TMH's obligations to Moore as governed by an oral agreement, since Moore is entitled to some retirement benefits under a "top hat plan."  Moreover,

Moore had no reasonable expectation of receiving the amount of retirement benefits he now claims.

47.     TMH is entitled to a judgment rescinding the 1998 Employment Agreement and the 2000 Employment Agreement, as modified by the Retirement Agreement, or portions thereof, so that Moore receives retirement benefits consistent with the anticipated benefits set forth in the September 1998 minutes and attachments, and consistent with the codification of the SERP Plan in 2004.

WHEREFORE, defendant/counter-plaintiff TMH requests that, if Moore's interpretation of the relevant documents is found to be technically accurate, the Court enter judgment in TMH's favor rescinding the SERP terms as expressed in the various employment agreements. TMH also requests that the Court award TMH its costs and attorneys' fees incurred as a result of Moore's claim and this action, pursuant to the 1998 Employment Agreement and the 2000 Employment Agreement as modified by the Retirement Agreement, and also pursuant to 29 U.S.C. sec. 1132(g)(1).

## COUNT III
### (Reformation)

48.     Defendant/counter-plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 37 of the counterclaim.

49.     This is a claim against Moore for reformation of the 2000 Employment Agreement as modified by the Retirement Agreement, and of the 1998 Employment Agreement if this Court deems reformation of both agreements appropriate.

50.     The reformation requested is appropriate based on the existence of fraud in the inducement of the relevant agreements, mutual or unilateral mistake as to the scope and financial consequences of Moore's retirement benefits set forth therein, and Moore's intentional or

negligent omission of material information when obtaining the Board's agreement to the language he requested.

51.     It would be inequitable for Moore to receive the retirement benefits he now claims, for all the reasons set forth herein.

52.     The 2000 Employment Agreement, as modified by the Retirement Agreement, should be reformed to remedy the inequities currently present with regard to the calculation of Moore's retirement benefits, and to reflect the true and original intent and reasonable expectations of the parties at the time the contract was entered into.

53.     TMH is entitled to a judgment to reform the 2000 Employment Agreement, as modified by the Retirement Agreement, so that it provides Moore with retirement benefits consistent with the anticipated benefits set forth in the September 1998 minutes and attachments, and consistent with the codification of the SERP Plan in 2004.

WHEREFORE, defendant/counter-plaintiff TMH requests that, if Moore's interpretation of the relevant documents is found to be technically accurate, the Court enter judgment in TMH's favor, reforming the SERP terms as expressed in the various employment agreements to conform to the SERP approved by the Board in 1998, and as re-codified in 2004.  TMH also requests that the Court award TMH its costs and attorneys' fees incurred as a result of Moore's claim and this action, pursuant to the 1998 Employment Agreement and the 2000 Employment Agreement as modified by the Retirement Agreement, and also pursuant to 29 U.S.C. sec. 1132(g)(1).

## COUNT IV
### (Repayment)

54.     Defendant/counter-plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 53 of the counterclaim.

55.     If TMH obtains judgment in its favor on Counts I, II, or III of its counterclaim, then it is entitled to repayment of excessive amounts paid to Moore between June 23, 2003 and June 23, 2006 ("Severance Period").   Such payments were made based on erroneous interpretations of the definition of "Base Compensation."

WHEREFORE, defendant/counter-plaintiff, TMH, requests that the Court enter a judgment in TMH's favor, awarding TMH repayment of overpayments to Moore during the Severance Period, and awarding TMH its costs and attorneys' fees incurred as a result of Moore's claim and this action, pursuant to the 1998 Employment Agreement and the 2000 Employment Agreement as modified by the Retirement Agreement, and also pursuant to 29 U.S.C. sec. 1132(g)(1).

Respectfully submitted this 9th day of October, 2009.

s/ Kenneth R. Hart
KENNETH R. HART
Fla. Bar No. 0192580
RUTH E. VAFEK
Fla. Bar No. 0034220
AUSLEY & McMULLEN
P. O. Box 391
Tallahassee, FL   32302
Telephone:  (850) 224-9115
Fax:  (850) 222-7560

AND

S. JONATHAN VINE
FBN 0010966
RACHEL BEIGE
FBN 0016366
COLE, SCOTT & KISSANE, P.A.
1645 Palm Beach Lakes Blvd.2nd Floor
W. Palm Beach, FL  33401
Telephone: (561) 383-9203
Fax: (561) 683-8977

Attorneys For Defendant
Tallahassee Memorial
Healthcare, Inc.

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 9th day of October, 2009, a copy of the above and foregoing was filed electronically.  Notice of this filing will be sent to the following persons by operation of the Court's electronic filing system, facsimile or U.S. mail.

Paul E. Parrish
Stephen H. Grimes
Holland & Knight LLP
100 N. Tampa Street,
Suite 4100
Tampa, Florida  33602


        <u>s/ Kenneth R. Hart    </u>
        Attorney