**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

DUNCAN MOORE,                                    )
                                                 )
       Plaintiff/Counter Defendant,     )
                                                 )
                                                 )    Case No.: 4:09-CV-273-RH/WCS
vs.                                              )
                                                 )
TALLAHASSEE MEMORIAL HEALTHCARE,                 )
INC., a Florida non-profit corporation,          )
                                                 )
       Defendant/Counter Plaintiff.     )
_____/

**PRETRIAL STIPULATION**

Pursuant to the Court's Order for Pretrial Conference dated March 5, 2010, a conference was held on May 4, 2010 and was attended by Paul Parrish, counsel for Plaintiff, Duncan Moore ("Moore") and by Kenneth Hart and Jonathan Vine for Defendant, Tallahassee Memorial Healthcare, Inc. ("TMH") and, as a result, the Parties have agreed to the Pretrial Stipulation set forth herein.

**I.      The Basis for Federal Jurisdiction**

This Court has federal jurisdiction pursuant to 28 U.S.C. § 1331 in that this is a claim by Moore for retirement benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**II.     A Concise Statement of the Nature of the Action**

Moore filed this ERISA action pursuant to 29 U.S.C. § 1132(a) seeking employee benefits from TMH. TMH, in turn, filed a four count counterclaim against Moore. Therein, TMH requested declaratory judgment with regard to the meaning of the employment agreements

that provided the retirement benefits sought by Moore, a rescission of the employment agreements or portions thereof, reformation of the employment agreements or portions thereof, and a refund for sums overpaid to Moore pursuant to the employment agreements.  Both parties deny that the other party is entitled to the relief sought.

III.   **A Brief General Statement of Each Parties Case**

**Duncan Moore's Statement**

By this action, Moore seeks to recover pension benefits due to him from TMH pursuant to his 2000 Employment Agreement with that organization.  The 2000 Employment Agreement (as modified by Moore's Retirement Agreement that was executed by parties in 2003) provides for a pension payment of $614,000.00 per annum.  TMH paid Moore considerably less.  As a result, Moore approximately is due the sum of $2,224,816.00, plus interest, costs and attorneys' fees as of the scheduled date of trial.

TMH employed Moore as its CEO in 1988.  In 1998, TMH decided to implement a Supplemental Executive Retirement Plan ("SERP") for its top executives in order to remain competitive with like institutions in terms of compensation.   To that end, the TMH Compensation Committee (a subcommittee of the TMH Board of Directors) approved the payment of SERP benefits for its top 4 executives in a meeting on September 9, 1998.  After the TMH Compensation Committee authorized the provision of SERP benefits, Moore and TMH negotiated a new employment agreement that provided for SERP payments upon Moore's retirement if certain conditions were met.  On October 22, 1998, Moore and TMH executed the new employment agreement ("1998 Employment Agreement").  The Chairman of the Board of Directors executed the agreement on behalf of TMH.

Moore and TMH honored the 1998 Employment Agreement for the next two years, each performing their duties and obligations thereunder. In 2000, TMH sought to secure Moore's services for an additional five years beyond 2003. (The maximum SERP benefit provided for in the 1998 Agreement was to vest in 2003, thus lessening the incentive Moore had to stay remain TMH beyond that year.) As a result, Moore and TMH, through its general counsel, Ed Moore, began negotiating a new contract. Ultimately, Moore and TMH entered into the "2000 Employment Agreement." The 2000 Employment Agreement required Moore to remain as TMH's CEO until the year 2008. In return, TMH provided Moore with additional security in the form of a promise to pay severance benefits should TMH terminate Moore without a cause prior to 2008. In addition, the 2000 Employment Agreement agreed to pay additional SERP benefits to Moore upon his retirement. The 2000 Employment Agreement also contained an integration clause that specifically stated that it would "supersede any and all previous contracts, arrangements or understandings between TMH and employee." Moore and TMH executed the 2000 Employment Agreement on or about October 17, 2000. TMH's Chairman of the Board of Directors executed the agreement on behalf of TMH.

In early 2003, TMH and Moore mutually agreed that Moore would retire effective June 23, 2003. Pursuant to that understanding, TMH drafted and Moore executed the "Agreement Regarding Early Retirement and Termination of Employment" ("Retirement Agreement"). TMH's Chairman of the Board of Directors executed that agreement on behalf of TMH. The Retirement Agreement, among other things, provided that Moore would receive all SERP benefits to which he was entitled under the 2000 Agreement and that those SERP benefits were considered fully vested. The Retirement Agreement also provided that Moore would receive the

severance benefits that were provided in the 2000 Agreement.  Moore in fact retired from TMH effective June 23, 2003.

On or about July 3, 2003, TMH began making SERP and severance payments to Moore pursuant to the 2000 Agreement, as modified by the Retirement Agreement.  The amount of those payments were provisional because the parties could not calculate the final benefits until over a year later when TMH completed the last applicable Form 990.  Initially, however, TMH paid Moore an annual SERP benefit of $404,519.04.  By letter dated June 29, 2006, TMH notified Moore that it was reducing Moore's annual SERP benefits to $219,399.61.  TMH subsequently carried through with that unilateral reduction of Moore's SERP payments.  Thereafter, Moore filed an administrative claim for the additional benefits to which he was entitled.  TMH denied Moore's claim and Moore appealed that decision on a timely basis.  TMH largely denied Moore's appeal, finding that Moore should receive an annual SERP payment in the amount of $227, 596.84.  Thereafter, Moore brought the instant suit.

Boiled down to its essence, this dispute between Moore and TMH comes down to what document defines Moore's SERP benefits and how that document was arrived at.  Moore contends that his 2000 Employment Agreement (as modified by the Retirement Agreement) defines his SERP benefits.  TMH, on the other hand, contends that the minutes of the September 9, 1998 meeting ("Meeting Minutes"), in which the Compensation Committee authorized the payment of SERP benefits, control of the calculation of SERP benefits due to Moore.

Moore's contention finds favor in the applicable law, while TMH's does not.  The 2000 Employment Agreement is a valid, enforceable contract entered into by two sophisticated parties.  As such, the law compels the enforcement of that agreement.  The 1998 Meeting Minutes, on the other hand, was a document unilaterally created by TMH that has no force of law in the context

of this case. A contract is a contract, meeting minutes are not. Likewise the 2000 Employment Agreement is binding upon both TMH and Moore, while the 1998 Meeting Minutes are not binding on Moore.

TMH claims, however, that it had always intended that the SERP it created for its executives be limited to the precise language used in the 1998 Meeting Minutes. TMH further alleges that, to the extent it agreed to anything different, it was either tricked into doing so by Moore or was operating under a mistaken belief. The facts show otherwise.

Initially, TMH claims that the SERP language in the 1998 Employment Agreement differs materially from the language in the 1998 Meeting Minutes that memorializes TMH's authorization of SERP benefits. A reading of both documents quickly dispels this contention. The 1998 Meeting Minutes language is as follows: "The CEO shall have a SERP target of 50% of salary at least ten years and 65% at 15 years and would be vested at 10 years." The 1998 Employment Agreement, on the other hand, states as follows: "Moore shall be entitled to retirement benefits offered to other employees of Tallahassee Memorial. Such benefits are outlined in the attachment to this agreement dated September 9, 1998." The "attachment" referred to in the preceding sentence are the very 1998 Meeting Minutes that TMH now claims to be the definitive statement of the SERP benefits Moore was to receive.

To be sure, the 1998 Employment Agreement also contains the following paragraph:

> For the purpose of figuring Moore's retirement benefits Moore's salary will be the total of salary and benefits submitted to the federal government on the required IRS 990 Forms for the component or affiliated organizations of Tallahassee Memorial Healthcare, Inc. . . . .

In other words, the difference between the SERP language found in the 1998 Meeting Minutes and that found in the 1998 Employment Agreement is that the latter document defined

the term "salary."  Thus, the language utilized in the 1998 Employment Agreement is exactly the language found in 1998 Meeting Minutes with the elaboration one would expect in a well written, legally binding employment contract between a corporation and its CEO.  Adding detail to a bare bones resolution to make a legally binding employment agreement is a far cry from a wholesale change of the language found in the 1998 Meeting Minutes.

Nonetheless, TMH alleges that it was mislead or mistaken as to the import of the definition of "salary" that was used in the 1998 Employment Agreement.  On one hand, TMH alleges that the definition of "salary" was placed in the 1998 Employment Agreement by Moore's fraud, breach of fiduciary duty, negligence, omission or other wrongful acts.  On the other hand, TMH claims it was mistaken as to the meaning of the definition of "salary."  The facts in no way bear out TMH's contentions in this regard.

Moore was quite up front with TMH in his negotiations over the 1998 Employment Agreement and TMH understood exactly what it agreed to.  TMH employed Paul Flood, a compensation expert, to assist TMH in drafting Moore's 1998 Compensation Agreement.  Flood signed off on that agreement.  Moore personally saw to it that each TMH Compensation Committee member received a copy of his draft 1998 Employment Agreement.  That draft redlined the SERP language, including the definition of "salary."  Moore also drafted and supplied to the Compensation Committee members a memorandum to explain the purpose of the redlined language.  Knowing exactly what the contract contained, the TMH Chairman of the Board of Directors (who was a member of the Compensation Committee) signed off on that agreement.

Moore and TMH both operated under the 1998 Employment Agreement for two years. In that time, TMH offered no complaint whatsoever about the terms of that agreement.  If TMH

had any complaints about the SERP language contained in the 1998 Agreement, it had every opportunity to rectify the problem in 2000.  In 2000, TMH's general counsel redrafted the 1998 Employment Agreement.  In so doing, TMH's general counsel completely rewrote the provisions pertaining to Moore's SERP benefits.  Indeed, TMH's general counsel's draft expanded the definition of "salary" so as to increase the SERP benefits Moore would receive under that agreement.  After TMH's general counsel completed the agreement, both Moore and TMH's Chairman of the Board of Directors executed that agreement.

Another three years passed after the signing of the 2000 Employment Agreement.  In that three years, TMH offered no criticism or complaint about the SERP language found in the 2000 Agreement.  In 2003, TMH received yet another opportunity to complain about, amend or object to the SERP benefits it originally had promised Moore in 1998.  In 2003, TMH drafted yet another agreement that provided SERP benefits to Moore, the "Retirement Agreement."  In drafting that agreement, TMH specifically analyzed the payment due under the SERP provisions in the 2000 Employment Agreement.  After that analysis, TMH specifically reaffirmed the SERP provisions of the 2000 Employment Agreement.  Moore and TMH's Chairman of the Board of Directors voluntarily executed the Retirement Agreement in 2003.

After Moore' retirement, TMH paid the SERP benefits as defined in his 2000 Employment Agreement for three years.  Only in 2006 did TMH reduce Moore's SERP payments in a way that reflected the position it asserts in this lawsuit.  Thus, only after three contracts, eight years of employment, Moore's retirement and three years of payment, did TMH discover it had been bamboozled by Moore or mistaken concerning the meaning of Moore's SERP provisions.  In fact, however, TMH was not mislead or mistaken, it knew the whole time what it agreed to pay Moore in the form of SERP benefits.

Because TMH knew what it agreed to and understood the terms of its agreement, its defenses and counterclaims must fail as a matter of law. Knowledge of the terms and their meaning preclude a finding of fraud, breach of fiduciary duty, negligence, omission, mutual mistake or unilateral mistake. TMH knew all along what it was getting into and this Court must now make TMH honor its obligation.

**Tallahassee Memorial Healthcare, Inc.'s Statement**

1.      Tallahassee Memorial Healthcare, Inc. asserts the following defenses to Moore's claim:

a.      TMH's interpretation of the benefits payable to Moore was in all respects proper and consistent with applicable law and regulation. TMH's determination was a reasonable interpretation and application of TMH's Supplemental Employee Retirement Plan ("SERP"), and was not arbitrary or capricious.

b.      Moore has erroneously included a number of items in his claim. These include items on TMH's Internal Revenue Service Form 990, which are not included within the definition of salary and benefits in the contract governing his employment. Form 990 does not use the term salary and only uses the term benefits in connection with retirement benefits. Moore also seeks benefits which were post employment payments. The post employment amounts he received were not paid within the period on which the calculation of Moore's SERP payments is based.

c.      To the extent that Moore's 1998 Employment Agreement, his 2000 Employment Agreement, or his 2003 Retirement Agreement (collectively, "Employment Agreements") amended the SERP approved by TMH in September of 1998, such amendments were null and void because, as CEO of TMH, Moore had fiduciary duties to TMH when entering into the Employment Agreements, and was obligated by those duties to follow TMH's

instructions with regard to the terms to be included in the Employment Agreements.  Moore was further obligated by those duties to inform TMH fully of his interpretation of the language and of the economic consequences of the Employment Agreements.  Moore failed to carry out his fiduciary duties in obtaining TMH's agreement to the Employment Agreements, by either intentionally or negligently misleading TMH, or by intentionally or negligently omitting the information Moore was required to provide to TMH.  Any contractual amendments to the SERP are therefore invalid.

        d.      The existence of mutual mistakes with regard to scrivener's errors, the meaning of the language in Moore's Employment Agreements defining his SERP benefits, or the financial consequences of the language requires that such language be rescinded or reformed to express the actual agreement and intent of the parties.

        e.      The existence of unilateral mistakes on the part of TMH with regard to scrivener's errors, the meaning of the language, or the financial consequences of the language in Moore's employment agreements requires that said agreements, or such parts of them as arose from such mistakes, be rescinded.

        f.      TMH paid Moore an excess amount of SERP payments and an excess amount of severance benefits between June of 2003 and June of 2006, and is entitled to an offset of such excess amounts against any amounts that may be found to be due to Moore.

        2.      The nature and bases of TMH's Counterclaim are as follows:

        a.      Count I (Declaratory Relief): TMH claims it is entitled to declaratory judgment with regard to the meaning of the Employment Agreements.  TMH is in doubt as to the meaning of various contractual terms and requires an interpretation of the language of the applicable Employment Agreements.

b.      Count II (Rescission): TMH is entitled to rescission of Moore's Employment Agreements, or portions thereof, on the grounds of fraudulent inducement of the relevant agreements, mutual or unilateral mistake as to the scope and financial consequences of Moore's retirement benefits, and Moore's intentional or negligent misrepresentation or omission of material information when obtaining the Board's agreement to the language he requested.

c.      Count III (Reformation): TMH is entitled to reformation of Moore's Employment Agreements, or portions thereof, on the grounds of Moore's fraudulent inducement to enter into the relevant agreements, mutual mistake as to the scope and financial consequences of Moore's retirement benefits, and Moore's intentional or negligent misrepresentation or omission of material information when obtaining TMH's agreement to the language he requested.

d.      Count IV (Refund): TMH is entitled to the repayment of excessive SERP benefits and excessive severance benefits paid to Moore between June 23, 2003 and June 23, 2006.  Those payments were based upon an erroneous interpretation of the amounts due to Moore.

## IV.    A List of All Exhibits to be Offered at Trial

A.      Joint Exhibits:

The Parties jointly intend to offer the documents contained in the Administrative Record previously filed with the Court on October 21, 2009 (Doc. #21).  The Parties stipulate to the admissibility for all purposes of the documents contained in the Administrative Record.   In addition, Moore intends to offer the following exhibits:

B.      Moore's Exhibits:

1.      Exhibits from the William A. Giudice deposition:

a)   11/28/00 memorandum, Giudice to Moore

b)  Giudice Settlement Agreement

c)  Duncan Moore compensation package

d)  5/20/03 handwritten notes

e)  8/26/04 memorandum Moore to O'Bryant

f)  Moore severance calculation

g)  2/24/04 e-mail Thomas to Giudice

h)  11/17/03 e-mail Giudice to Thomas

i)  10/15/03 e-mail, Giudice to Metz

j)  5/10/4 letter, Giudice to Moore

k)  Disclosures, Amended Form 990, 2002 and 2003

l)  Letter, Giudice to Moore

2.  Exhibits from the Stephen K. Halpert deposition:

a)  Summary of proposed testimony (Composite Ex. A)

3.  Exhibits from the Edgar M. Moore deposition:

a)  7/11/01 memorandum, E. Moore to D. Moore

b)  5/2/01 and 6/25/01 memo from E. Moore to D. Moore

c)  5/7/03 memo, E. Moore to D. Moore

d)  5/20/03 handwritten notes

e)  Undated memo, E. Moore to D. Moore

f)  1/14/04 memo, E. Moore to D. Moore

g)  2/24/04 e-mail, Thomas to Giudice, et al

h)  2/24/04 e-mail, Thomas to Giudice, et al

i)  7/21/04 Resolution

j)  7/21/04 Executive Committee Minutes

k) Memo of understanding

l) 10/12/05 Executive Committee Minutes

m) Statement 33 re Form 990

n) 8/26/04 memo, E. Moore to O'Bryant

C. TMH's Exhibits:

a) All Exhibits Listed by Moore

b) Exhibit A - Compensation Details - Fiscal and Years

c) Exhibit B - Salary - Service Years

d) Exhibit C - Salary and Benefits - Service Years

e) Exhibit D - Personal Leave Time and Long Term Sick Leave

f) Exhibit E – Post Employment Payments – Moore's Claim

g) Exhibit F – Post Employment Payments – TMH's Claim

**V.    A List of All Witnesses, Including Rebuttal and Expert, Intended to be called at the Trial by Each Party**

A. Moore's Witnesses:

Duncan Moore

Mark O'Bryant

Jerry McDaniel, Jr.

John Thomas

Gail Seals

Paul Flood

Edgar Moore

William Giudice

Charles Mitchell

      John Lewis, Ph.D.

      Tom Lawhorn, M.D.

      Brent Pichard

  B.    TMH's Witnesses:

      Paul Flood (By Deposition)

      Edgar Moore

      William Giudice

      Charles Mitchell

      John Lewis, Ph.D.

      Tom Lawhorn, M.D.

      Brent Pichard

      John Thomas

      Gail Seals

      Stephen Halpert (Expert for TMH)

**VI.**   **A Concise Statement of Those Facts Which are Admitted and Will Require No Proof at Trial, Together with Any Reservations Directed to Such Admissions**

  1.    Duncan Moore is an individual residing in Leon County, Florida.

  2.    TMH is a not-for-profit healthcare facility located in Tallahassee, Florida.

  3.    TMH hired Moore to serve as its Chief Executive Officer ("CEO") in 1988.

  4.    In 1988, Moore and TMH entered into a written employment agreement, the "1988 Employment Agreement."

  5.    In 1998, TMH conducted a review to determine whether its executive compensation benefits were appropriate.  The Compensation Committee, a subcommittee of

TMH's Board of Directors, conducted the review with the assistance of a compensation consultant, Paul Flood.  Moore did not serve on the board or the committee.

6.     Subsequent to the aforesaid review, the officers of the TMH Board of Directors authorized the creation of a Supplemental Executive Retirement Plan ("SERP") on September 9, 1998, for TMH's top four executives, including the CEO, Duncan Moore.

7.     After September 9, 1998, TMH and Moore revised Moore's employment agreement for the purpose, among other things, of incorporating the SERP benefits into Moore's contractual arrangement with TMH.

8.     On or about October 22, 1998, TMH and Moore executed a revised employment agreement ("1998 Employment Agreement").  The 1998 Employment Agreement contained language that provided SERP benefits to Moore.

9.     On or about October 17, 2000, TMH and Moore executed the third employment agreement ("2000 Employment Agreement").  The 2000 Employment Agreement modified the SERP provisions of the 1998 Employment Agreement.

10.    In early 2003, TMH and Moore agreed that Moore would retire effective June 23, 2003.  Pursuant to that understanding, on or about January 29, 2003, TMH and Moore executed an "Agreement Regarding Early Retirement and Termination of Employment" ("Retirement Agreement").

11.    Moore retired from TMH effective June 23, 2003.

12.    On or about July 3, 2003, TMH began making SERP and severance payments to Moore pursuant to the 2000 Employment Agreement and Retirement Agreement.  Initially, TMH paid Moore an annual benefit of $622,237.04, of which $404,519.08 was for Moore's SERP benefits.

13.     On or about May 21, 2004, TMH reduced Moore's SERP and severance payments to Moore to an annual benefit of $563,000.10, of which $365,950.10 was for Moore's SERP benefits.

14.     By a letter dated November 10, 2005, Moore filed an Administrative Claim for additional benefits to which he claimed he was entitled.

15.     By a letter dated May 21, 2006, TMH's SERP Claim Committee issued a decision that held that Moore is entitled to an annual SERP benefit of $219,400.00.

16.     On or about June 29, 2006, TMH notified Moore that it was reducing Moore's annual SERP benefits to $219,399.61.   TMH subsequently reduced Moore's annual SERP benefits to that sum.

17.     Moore appealed TMH's initial decision on a timely basis.

18.     On appeal, TMH denied the majority of Moore's claims but found that Moore should receive an annual SERP payment in the amount of $227,596.84.

19.     After issuing its appeal decision, TMH also paid Moore the difference between the $227,596.84 annual amount and the $219,399.61 annual amount it had been paying him, calculated from June 23, 2006 through the date of the appeal decision.

20.     From June 30, 2006 to the present time, TMH has paid Moore's SERP benefits in the annual amount of $227,596.84.

## VII.    A Concise Statement of Those Issues of Law Upon Which there is Agreement[1]

1.     Moore's claim relates to an employee benefit plan and, as a result, falls within the scope of ERISA.

2.     The supplemental executive retirement plan ("SERP") under which Moore seeks benefits is a "top hat" plan within the meaning of the pertinent IRS regulations.

---

[1] The parties reserve the right to address more fully the issues listed herein.

3.     The applicable standard of review of TMH's decision regarding Moore's SERP benefits is *de novo*.

4.     Moore has exhausted his administrative remedies with regard to his claims for additional SERP benefits.

5.     Moore's ERISA claims are subject to a five (5) year statute of limitations.

6.     Statutes of limitations do not apply to or bar any of TMH's affirmative defenses.

7.     Courts have the authority to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.  In developing federal common law, the Court may look to state law and the Restatement for guidance to the extent that those sources do not conflict with ERISA or its underlying policies.  [*Moore asserts a reservation to this statement.  His attorney would like to add the requirement that the law to which the Court looks for guidance must "further the purpose of ERISA."  He also does not agree that the Restatement can be used to guide the development of federal common law.*]

8.     The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages. *Gracey v. Eaker,* 837 So. 2d 348, 353 (Fla. 2002).

9.     "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Goodall v. Whispering Woods Center LLC*, 990 So.2d 695, 699 (Fla. 4th DCA 2008).  Moreover, "by definition, the mutual mistake of fact must be of a fact existing at the time of the contract and not as to a future event."  *Barnacle Bill's Seafood Galley, Inc. v. Ford*, 453 So.2d 165, 167 (Fla. 1st DCA 1984).

10.     Extrinsic evidence is allowable to establish and prove a mutual mistake.  If proven, TMH would be entitled to the remedy of reformation, in which the court rewrites the

pertinent portions of the Agreement to conform to the initial belief as to the effects of the writing.

11.     A contract may be rescinded due to unilateral mistake in either of the following situations:

> (1) where the mistake goes to the substance of the agreement, the error does not result from an inexcusable lack of due care, and the other party has not so relied on the mistake that it would be unconscionable to order rescission.  *See Maryland Ca. Co. v. Krasnek*, 174 So.2d 541 (Fla. 1965), and *Roberts & Schaefer Co. v. Hardaway Co.,* 152 F.3d 1283, 1291 (11th Cir. 1998).

> (2) where there is a unilateral mistake plus ambiguity in the contract itself.  *See Ghahramani v. Guzman*, 768 So.2d 535 (Fla. 4th DCA 2000).

Parol evidence is admissible to prove unilateral mistake.

12.     The elements of fraudulent inducement and fraudulent misrepresentation are: (1) a false statement was made regarding a material fact; (2) the individual who made the statement knew or should have known that it was false; (3) the maker intended that the other party rely on the statement; and (4) the other party justifiably relied on the statement to its detriment.

13.     If TMH is found to have paid Moore an excess amount of SERP or severance benefits, it is entitled to an offset of such excess amounts against any amounts that may be found to be due to Moore.  The severance benefits referred to in this paragraph are 65 percent of the total amount paid by TMH as "severance benefits" between May 20, 2004 and July 1, 2006, as referenced in the letter from Giudice dated June 29, 2006.

14.     The counterclaims filed by TMH in this action are compulsory counterclaims.

15.     Declaratory relief by a court of the United States is proper if there exists an actual controversy between two parties and the amount in dispute exceeds $75,000.00.

16.     A contract brought about by fraudulent inducement, fraudulent misrepresentation, or mutual mistake is subject to reformation by the courts.  *Rest. 2d of Contracts, §§ 155, 166.  See Malt v. R.J. Mueller Enterprises, Inc.*, 396 So. 2d 1174 (Fla. 4th DCA 1981).

17.     A contract brought about by fraudulent inducement, fraudulent misrepresentation, or mutual or unilateral mistake is subject to rescission.  *Rest. 2d of Contracts § 152, 153, 164.  See Bass v. Farish*, 616 So. 2d 1146 (Fla. 4th DCA 1993) (*citing Savage v. Horne*, 31 So. 2d 477 (Fla. 1947); *Royal v. Parado*, 462 So. 2d 849 (Fla. 1st DCA 1985)).

18.     Waiver imports the intentional relinquishment of a known right. *Abamar Housing and Development, Inc. v. Lisa Daly Lady Décor, Inc.,* 698 so. 2d 276, 278 (Fla. 3d DCA 1997); *Leonardo v. State Farm Fire and Casualty Co.,* 675 So. 2d 176, 178 (Fla. 4th DCA 1996).

19.     A party may be estopped from pursuing a claim or defense where: (1) the party to be estopped makes a representation of material fact to the other party that is contrary to a position it later asserts with reason to believe that the other party will rely upon it; (2) and the other party reasonably relies upon it; (3) the party seeking estoppel changed his position to his detriment based on the representation and his reliance on it. *Heckler v. Community Health Services of Crawford Co., Inc.,* 467 U.S. 51, 59 (1984) (citing *Rest. 2d of Torts* § 894 (1979)).  There is no estoppel when the party seeking the estoppel was aware of the true facts and thus was not misled by the other party's conduct." *Winans v. Weber,* 979 So.2d 269, 275 (Fla. 2d. DCA 2007).

20.     The parties have agreed to reserve the issues of entitlement to and amount of attorneys' fees, costs, and interest for post-judgment proceedings.

## VIII.   A Concise Statement of Issues of Fact Which Remain to be Litigated

1.     Whether TMH properly calculated and paid the SERP benefits due to Moore following his retirement.

2.      If any of Moore's employment agreements are found to be ambiguous, what the parties intended and how the language in the agreements should be interpreted.

3.      Whether a SERP plan was created by the September 9, 1998, minutes of the Board of Directors and its Attachments.

4.      If a SERP Plan was created on September 9, 1998, whether the parties intended to amend that plan through subsequent employment contracts and whether such amendments are valid.  *[Moore disputes that this is an issue.]*

5.      Whether the language regarding SERP benefits in Moore's 1998 Employment Agreement differed materially from the language authorizing the creation of the SERP in the September 9, 1998 minutes.  *[Moore asserts a reservation to this fact in that he believes it is irrelevant.]*

6.      Whether the language regarding SERP benefits in Moore's 2000 Employment Agreement differed materially from the language authorizing the creation of the SERP in the September 9, 1998 minutes.  *[Moore asserts a reservation to this fact in that he believes it is irrelevant.]*

7.      Whether the language regarding SERP benefits in Moore's 2000 Employment Agreement differed materially from the language in Moore's 1998 Employment Agreement. *[Moore asserts a reservation to this fact in that he believes it is irrelevant.]*

8.      Whether the elements of breach of fiduciary duty exist in connection with Moore negotiating and entering into the 1998 Employment Agreement.  *[Moore disputes that this is an issue.]*

9.      Whether the elements of fraud in the inducement exist in connection with Moore negotiating and entering into the 1998 Employment Agreement.  *[Moore disputes that this is an issue.]*

10.     Whether the elements of mutual mistake exist in connection with the formation of the 1998 Employment Agreement.  *[Moore disputes that this is an issue.]*

11.     Whether the elements of unilateral mistake exist in connection with the formation of the 1998 Employment Agreement.  *[Moore disputes that this is an issue.]*

12.     Whether Moore intentionally or negligently did not disclose material information to TMH concerning the SERP benefits provided for in his 1998 Employment Agreement. *[Moore disputes that this is an issue.]*

13.     Whether the elements of breach of fiduciary duty exist in connection with Moore negotiating and entering into the 2000 Employment Agreement or the Retirement Agreement.

14.     Whether the elements of fraud in the inducement exist in connection with Moore negotiating and entering into the 2000 Employment Agreement or the Retirement Agreement.

15.     Whether the elements of mutual mistake exist in connection with the formation of the 2000 Employment Agreement or the Retirement Agreement.

16.     Whether the elements of unilateral mistake exist in connection with the formation of the 2000 Employment Agreement or the Retirement Agreement.

17.     Whether Moore intentionally or negligently did not disclose material information to TMH concerning the SERP benefits provided for in his 2000 Employment Agreement or the Retirement Agreement.

18.     Whether TMH has proven what it is required to prove in order to obtain the remedies of reformation or rescission of the 1998 Employment Agreement, the 2000 Employment Agreement, or the Retirement Agreement, or portions thereof.

19.     Whether Moore had fiduciary duties in connection with obtaining the SERP provisions in his employment agreements, and if so, did he breach those duties?

20.    Whether TMH paid Moore SERP benefits between June 2003 and June 2006 in excess of those to which he was entitled.

21.    Moore's damages, if any.

22.    TMH's damages, if any.

23.    Whether the elements of waiver exist in connection with TMH's counterclaims against Moore, and whether waiver applies to TMH's affirmative defenses as well as counterclaims.

24.    Whether the elements of estoppel exist in connection with TMH's counterclaims against Moore, and whether estoppel applies to TMH's affirmative defenses as well as counterclaims.

25.    Whether the elements of ratification exist in connection with TMH's counterclaims against Moore, and whether ratification applies to TMH's affirmative defenses as well as counterclaims.

26.    Whether TMH brought its claims for reformation, rescission and claim for a return of overpayments within a reasonable time or the applicable statute of limitations period.

27.    Whether TMH has waived or is estopped from asserting defenses regarding Moore's claims, or has ratified any portion of Moore's claims.

28.    If Moore is entitled to an adjudication regarding the amount of severance benefits he should have received from June of 2003 to June of 2006, what, if any, amount of severance should he receive from or return to TMH.

**IX.    A Concise Statement of Those Issues of Law Which Remain for a Determination by the Court**

1.     Whether Moore may obtain in this action an adjudication regarding the amount of severance benefits he should have received from June of 2003 to June of 2006, under the state of the pleadings, disclosures, and briefing submitted in this proceeding to date.

2.     Whether the 1998 Employment Agreement is ambiguous.  *[Moore does not agree that this is a relevant issue.]*

3.     If the 1998 Employment Agreement is not ambiguous, the legal interpretation of the 1998 Employment Agreement.  *[Moore does not agree that this is a relevant issue.]*

4.     Whether the 2000 Employment Agreement is ambiguous.

5.     If the 2000 Employment Agreement is not ambiguous, the legal interpretation of the 2000 Employment Agreement.

6.     Whether the Retirement Agreement is ambiguous.

7.     If the Retirement Agreement is not ambiguous, the legal interpretation of the Retirement Agreement.

8.     Whether ERISA pre-empts any of TMH's counterclaims.

9.     Whether a breach of fiduciary duty is a defense to a claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

10.     What duties Moore owed to TMH in the context of negotiating and consummating his compensation, employment agreements, and SERP provisions.

11.     Whether Moore bears the burden of showing the validity of the employment agreements and the fairness and honesty of his dealings with TMH.

12.     Whether non-disclosure of a fact is equivalent to an assertion… "where the other [party] is entitled to know the fact because of a relation of trust and confidence between them," i.e., a fiduciary relationship.

13.     If a cause of action or defense for fraudulent omission exists, and if so, whether it requires the following elements: (1) defendant had a duty to disclose a material fact; (2) the defendant knowingly concealed or failed to disclose the material fact; (3) defendant intended that the nondisclosure induce another to act on it; and (4) consequent injury by the party acting without knowledge of the material fact.

14.     If a cause of action or defense for negligent misrepresentation exists, and if so, whether it requires the following elements: (1) a false statement (misrepresentation) concerning a material fact; (2) representer either made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.  *[Moore asserts a reservation; namely, that this defense is not a proper defense to his claim.]*

15.     Whether a cause of action or defense for negligent omission exists, and if so, whether it is properly stated as follows: Negligent omission occurs when a person fails to disclose to the injured party a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction, and subjects the non-disclosing party to the same liability as though he had represented the nonexistence of the matter that he has failed to disclose, if he is under a duty to the other to exercise reasonable care to disclose the matter in question.  *Rest. 2d of Torts, § 551(1).*

16.     Whether a contract brought about by breach of fiduciary duty, fraudulent omission, negligent misrepresentation, or negligent omission is subject to reformation by the court.

17.     Whether a contract brought about by breach of fiduciary duty, fraudulent omission, negligent misrepresentation, or negligent omission is subject to rescission.

18.     What TMH must prove in order to obtain rescission or reformation of the employment agreements, or portions thereof.

19.     If TMH is found to have paid Moore more SERP benefits than he was owed, whether repayment of those overpayments is an appropriate remedy.

20.     If the Court finds that Moore obtained TMH's agreement to the 2000 Employment Agreement, as modified by the Retirement Agreement, via fraud or wrongdoing, whether he is barred from recovering damages thereunder by the doctrine of unclean hands.

21.     Whether the SERP under which Moore seeks benefits was first created by TMH on September 9, 1998.

22.     Whether Moore's claim for SERP benefits is barred by the applicable statute of limitations.

23.     Whether any of TMH's counterclaims are barred by the applicable statutes of limitations.

24.     Whether Moore's measure of damages is equal to the amount of SERP benefits to which he is entitled minus the amount of SERP benefits TMH has already paid him.

25.     Whether TMH's measure of damages is equal to the amount already paid to Moore for SERP benefits minus the amount of SERP benefits to which Moore is entitled.

26.     What burden of proof TMH must meet in order to obtain rescission under any of its defenses or as a counterclaim.

27.     Whether Moore waived any defenses to TMH's counterclaims based on the applicable statutes of limitations when he filed an affirmative claim for relief.

28.     Whether TMH was guilty of undue delay in asserting its defenses or claims against Moore.

29.     Whether either party is entitled to attorney's fees.  *[The parties agree to reserve this matter for post-judgment proceedings.  Therefore, no proof of fees should be required at trial.]*

**X.     A Concise Statement of Any Disagreement as to the Applicable Rules of Evidence or the Federal Rules of Procedure**

None known at this time.

**XI.     A List of All Motions or Other Matters Which Require Action by the Court**

1.     Moore's Motion for Partial Summary Judgment.

2.     TMH's Motion for Partial Summary Judgment.

**XII.     A Statement Whether this is a Jury or Non-Jury Case**

This is a non-jury case.

**XIII.     Counsels' Respective Estimates of the Length of the Trial**

1.     Moore's Counsel estimates the length of the trial to be 4 days.

2.     TMH's Counsel estimates the length of the trial to be 4 days.

**XIV.   The Signature of Counsel for All Parties**

Dated this 14th day of May, 2010

Respectfully submitted,

QUARLES & BRADY LLP                    AUSLEY & McMULLEN, P.A.


s/  Paul E. Parrish_____          s/ Kenneth R. Hart_____
PAUL E PARRISH                         KENNETH R. HART
Fla. Bar No. 373117                    Fla. Bar No. 0192580
101 E. Kennedy Blvd.                   RUTH E. VAFEK
Suite 3400                             Fla. Bar No. 0034220
Tampa, FL  33602-5195                  AUSLEY & McMULLEN, P.A.
Phone:  813-387-0300                   P. O. Box 391
Fax:  813-387-1800                     Tallahassee, FL  32302
Attorneys for Plaintiff                Telephone:  850-224-9115
                                       Fax:  850-222-7560

                                       AND

                                       S. JONATHAN VINE
                                       FBN 0010966
                                       RACHEL BEIGE
                                       FBN 0016366
                                       COLE, SCOTT & KISSANE, P.A.
                                       1645 Palm Beach Lakes Blvd.2nd Floor
                                       W. Palm Beach, FL  33401
                                       Telephone: (561) 383-9203
                                       Fax: (561) 683-8977

                                       Attorneys for Defendant


h:\rev\tmh\duncan moore\drafts\pleadings\pretrial stip etc\pretrial stipulation - final.doc