IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DUNCAN MOORE,

    Plaintiff,

v.                                             CASE NO. 4:09cv273-RH/WCS

TALLAHASSEE MEMORIAL HEALTHCARE,
INC.,

    Defendant.

_____/

**ORDER FOR ENTRY OF JUDGMENT**

The issue in this case is the amount due under a supplemental employee retirement plan or "SERP" governed by the Employee Retirement Income Security Act. The case was tried without a jury. This order directs the clerk to enter a judgment based on the findings of fact and conclusions of law announced at some length on the record at the end of the trial. The order summarizes the ruling.

I

The plaintiff was the defendant nonprofit hospital corporation's chief executive officer from 1988 to 2003. In 1998, the defendant hired a consultant to address the possible adoption of a SERP for the plaintiff and several other top

executives. On September 9, 1998, the defendant's Board of Directors voted to adopt a SERP calling for the plaintiff to receive payments totaling 50% of a base if he retired after 10 years of total service, increasing to a maximum of 65% after 15 years of service. As it turned out, the plaintiff served 15 years before retiring, so for convenience this order usually refers only to 65%.

The Board believed the plaintiff was performing well. It sought to keep him and intended the SERP to be a generous benefit. The SERP brought the plaintiff's overall compensation and retirement package into line with those of similarly-situated chief executives.

The base—the number to which the 65% applied—was the average of the plaintiff's best five years of salary, not including benefits. The omission of benefits was significant. The plaintiff had the right to defer part of his salary, and the defendant had long agreed to match any amount the plaintiff deferred, up to a maximum that increased from time to time. In 1998, the maximum was $100,000. Under the SERP approved by the Board, the $100,000 match did not increase the plaintiff's prospective retirement payments.

In addition, the SERP approved by the Board called for the targeted amount—65% of salary as properly calculated—to come not from the SERP standing alone, but instead from three sources combined: social security; the defendant's existing retirement plan; and the SERP. Again, this was significant; a

65% SERP payment without a reduction or "offset" for social-security and underlying-retirement-plan benefits would have been substantially greater.

When the Board acted on September 9, 1998, the SERP had been outlined in concept, but the details had not been fleshed out or committed to a formal document. On September 24, the plaintiff himself presented a draft employment contract that incorporated the SERP. The draft was a mark-up from the plaintiff's 1988 employment contract. The plaintiff sent the draft with a cover memo to the defendant's Board officers, who were serving in effect as a compensation committee responsible for implementing the September 9 action. The cover memo specifically cited the SERP provision, saying it set out a "a clear definition of my compensation." Admin. R. 130. The SERP provision was italicized in the draft to indicate it was new.

The plaintiff's draft SERP provision differed in two important respects from the SERP approved by the Board on September 9. First, the draft called for the payment of 65% of salary *and benefits*—not salary alone—as listed on a specific IRS form, Form 990. A nonprofit corporation uses Form 990 to disclose officer compensation and related payments. Second, the draft made no reference to an offset for social-security and underlying-retirement-plan benefits. Aside from citing the SERP provision and italicizing the new language, the plaintiff did not call these changes to the Board officers' attention. To the contrary, the plaintiff

deflected attention from the changes by discussing other issues in the cover memo. Admin. R. 130.

The Board officers met on October 14 and 21, 1998. They approved a contract based on the plaintiff's draft but with changes on matters not now at issue: the definition of termination for cause and the period covered by a severance provision that would apply under specific circumstances. The officers apparently did not discuss or even notice the changes the plaintiff had made to the SERP. The chairman of the Board signed an employment contract with the plaintiff on October 22, 1998. The contract included the SERP provision exactly as the plaintiff had drafted it. The chairman still did not notice the changes from the plan approved on September 9.

In 2000 the defendant's attorney redrafted the employment contract. He greatly expanded the SERP provision, adding detail but intending no substantive change. He based the 2000 provision on the SERP provision in the 1998 contract as signed. The attorney had a copy of the September 9, 1998, Board minutes, but he did not notice the difference between the SERP as approved in those minutes and the SERP as set out in the 1998 contract. The plaintiff signed the 2000 contract in exactly the form presented to him by the attorney. The chairman of the Board signed the contract for the defendant. The plaintiff mentioned nothing—to the attorney or to the chairman—about the missing offset or about the inclusion of

benefits as well as salary in the base to which the 65% applied.  The plaintiff had no reason to mention those matters at that point; he understood the 2000 contract to be no different in those respects than the 1998 contract.

In 2003 the plaintiff and the defendant agreed that the plaintiff should retire. It was neither a forced retirement nor the result of either party's dissatisfaction with the other.  The defendant assigned two Board members to look into financial arrangements for the departure.  They recommended a package to the Board that followed in some respects the terms of the 2000 employment contract that would have applied had the plaintiff quit or been fired.  But the package also differed very substantially from those terms of the 2000 employment contract.  It was, in short, a new package, not just an application of the existing contract.

The package was set out in a written agreement.  The Board unanimously approved it.  The plaintiff accepted it without question and without change.  The plaintiff and the chairman of the defendant's Board signed the agreement, intending to be bound by its terms.

The 2003 agreement called for the plaintiff to receive SERP payments of 65% of salary *and benefits* as reported on Form 990, without an offset for social-security and underlying-retirement-plan benefits.  This is what the Board intended. No Board member believed or reasonably could have believed otherwise.  On these matters the agreement was crystal clear.

II

The defendant says the plaintiff breached his fiduciary duty by failing to call to the defendant's attention the deletion of the offset and the addition of benefits to the base on which the 65% was calculated.  The defendant says alternatively that omitting the offset and adding benefits to the base were mutual or at least unilateral mistakes.  The defendant says the various contracts should be reformed.

Whether the 1998 or 2000 agreement resulted from a breach of fiduciary duty—whether the plaintiff met his duty by citing the SERP provision and italicizing the new language in his draft contract or had a duty to go further and explicitly call the change to the defendant's attention—is an issue that need not be resolved.  Regardless of the validity of the 1998 or 2000 contract, the 2003 agreement was a new contract with clear terms plainly accepted by each side.  In entering the 2003 agreement—indeed, in formulating and proposing it—the defendant relied on nothing the plaintiff did or said.  The defendant decided for itself that it wished to enter an agreement with precisely these terms.  The defendant knew what it was agreeing to.  The agreement is valid and binding.

III

The 2003 agreement is ambiguous in two respects.  The SERP benefit is plainly 65% of the average of the highest five years of salary and benefits.  But the agreement does not specify whether a year is a calendar year, the defendant's fiscal

year, a year starting from the anniversary of the date in 1988 when the plaintiff was hired, or a year ending on the date in 2003 when the plaintiff retired or on the same date in a prior year.  Because the agreement specifically refers to salary and benefits reported on a specific IRS form—Form 990—I conclude the relevant period is the same year covered by the form, that is, the defendant's fiscal year.

The agreement also does not explicitly indicate whether salary and benefits include the accumulated leave that was payable upon the plaintiff's departure or, more importantly, severance pay or SERP payments for periods after the plaintiff's departure.

I conclude that accumulated leave is included.  It is conceptually no different from the plaintiff's last pay check—earned during the plaintiff's tenure but paid after his departure.  One could argue both sides of the question whether the accumulated leave should be treated as paid during the year of the plaintiff's departure or apportioned in some manner among earlier years.  The difference is minor.  I conclude, based on the agreement's reference to Form 990, that the leave should be treated as paid during the plaintiff's year of departure, exactly as reported on the 990.

The result is different for severance and SERP payments.  They are not properly included in the salary and benefits used in the SERP calculation.  The purpose of the SERP was to provide the plaintiff a 65% share of what he was

making while employed. He was making his salary and benefits, including the salary match and paid leave. But severance and the SERP were unequivocally post-departure benefits intended to substitute for, not add to, the plaintiff's ongoing compensation while employed. Nobody reasonably could have thought otherwise. Nobody reasonably could have thought that the SERP calculation—65% of the plaintiff's average compensation, including salary and benefits, for his best five years—would actually be more than 100% of the plaintiff's best year of compensation during his entire tenure with the defendant. Calculating the SERP by including severance and SERP payments makes no sense.

## IV

Based on these rulings, the plaintiff is entitled to an annual SERP payment of $365,119.03. *See* Def. Ex. 19. Between the date of the plaintiff's departure and today, the defendant has made periodic SERP payments. The payments were originally more than was owed. More recently the payments have been less than owed. In total, the payments have fallen over $500,000 short.

This order directs the defendant to pay the past due amounts and to make payments going forward in accordance with this order. In addition, I find that a reasonable interest rate for the covered period is two percent without compounding. Interest runs both ways—in favor of the defendant, for the early overpayments, and in favor of the plaintiff, for the underpayments.

## V

For these reasons and those set out at greater length on the record at the end of the trial,

IT IS ORDERED:

1. The clerk must enter a judgment stating:

> It is declared that the amount due to the plaintiff from the defendant under their 2003 contract's supplemental employee retirement plan is $365,119.03 per year payable in monthly installments. The defendant must pay the plaintiff the past-due amounts, with net interest at 2% per annum, and must make the appropriate payments going forward. All other claims are dismissed with prejudice.

2. The clerk must close the file.

SO ORDERED on July 2, 2010.

s/Robert L. Hinkle
United States District Judge
